**BEATRICE COMPANY, Appellant,**

**v.**

**RUSTY JONES, INC., Appellee.**

**In re RUSTY JONES, INC., Debtor.**

**No. 88 B 18708.**

United States District Court,
N.D. Illinois, E.D.

April 14, 1993.

Frank L. Butler, David Bruce Love, Winston & Strawn, Chicago, IL, for appellant.

Edith F. Canter, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Glenn R. Heyman, Dannen, Crane, Heyman & Simon, Chicago, IL, for appellee.

### MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Rusty Jones, Inc. has been in bankruptcy since 1988. It is now apparent that it will not survive that proceeding—it must be liquidated. The problem is how and when. The difficulties with the Rusty Jones bankruptcy are twofold. First, the assets are for all intents and purposes unknown. While the estate currently has only $1.4 million in cash, it has a potentially large asset in the form of a lawsuit. The lawsuit was brought by the trustee, Mr. Heyman, against Beatrice Company ("Beatrice"), a company that once owned some eighty percent of the stock of Rusty Jones. Mr. Heyman's suit asserts that Beatrice is liable for certain contingent and liquidated claims filed against the Rusty Jones estate (more about that later). The lawsuit was filed in 1989 and is currently set for trial in September of this year before Judge Williams. No one is now able to evaluate the trustee's likelihood of success. However, Beatrice's exposure apparently exceeds $150 million.

Secondly, the liabilities of Rusty Jones are equally murky. The vast majority of claimants are the customers of Rusty Jones who received a warranty at the time their cars were given a rust protection treatment. The warranty provides that as long as the original customer continues to own the vehicle Rusty Jones guarantees against rust damage. There are conditions on the warranty such as a requirement of yearly

inspection and limitations as to the amount that can be recovered.

The warranty holders have filed claims against the estate of the bankrupt. The first group, some 28,000 in number, are liquidated claims; i.e., claims for rust damage that have already occurred. These claims total some $14 million. There is a second group of claims, the so-called "to be determined" or TBD claims. This group, totaling some 230,000 in number, are claims by customers who have a warranty but whose vehicles have not yet suffered rust damage.[1] Various estimates have been made by experts as to how many of these TBD claimants' vehicles will experience rust and what their damages will be. Suffice it to say that the viable claims from this TBD group may total $150 million.

Thus, the problem facing the bankruptcy court was what to do with these liquidated and contingent claims when the assets of the estate were, for all intents and purposes, unknown. After substantial delays during the five-year history of the estate, Judge Schmetterer decided to act. In a comprehensive and detailed opinion, Judge Schmetterer decided that the massive number of warranty claims (both liquidated and unliquidated) should be resolved by the bankruptcy court now rather than waiting for the conclusion of the Beatrice litigation in the district court. 143 B.R. 499. In so holding, Judge Schmetterer rejected the unanimous recommendation of the interested parties, including the trustee, that the resolution of the warranty claims be delayed until the conclusion of the Beatrice suit. Accordingly, a hearing date was set and procedures were devised to validate the liquidated claims and to estimate the TBD claims.[2] The procedures are necessarily complex both because of the number of claims and because so many can only be estimated.

Beatrice sought leave to appeal that order in this Court, and we held that Beatrice could do so because it had made the necessary showing under the collateral order doctrine. (Memorandum Opinion and Order of October 27, 1992.) Having had the benefit of extensive briefs and oral argument from Beatrice and the trustee (which argued in favor of the bankruptcy judge's determination), we now reverse and order that the valuation process on all the warranty claims be stayed until at least the conclusion of the district court proceedings in the Beatrice lawsuit.

### Discussion

■ Initially we note that bankruptcy courts have wide latitude in determining the best method for valuing claims. *See Bittner v. Borne Chem. Co.*, 691 F.2d 134, 136 (3rd Cir.1982). This Court can reverse a bankruptcy court's decision on the method for ascertaining the value of claims only when it is so fundamentally wrong that no reasonable person could agree with it. *See Libby v. Illinois High School Ass'n*, 921 F.2d 96 (7th Cir.1990). Thus, the sole issue before us is whether Judge Schmetterer abused his discretion in ordering that the hearings to validate the liquidated warranty claims and to estimate the TBD warranty claims should proceed immediately.

■ As argued by the trustee and as made clear by Judge Schmetterer's opinion, the bankruptcy court felt the hearings should proceed forthwith because further delay would only serve to increase the likelihood that warranty holders with valid claims would have those claims disallowed or attacked. That court feared that the claimants are so numerous that many will move without forwarding addresses; their cars will suffer rust damage and they will fail to document it; or they will simply get disgusted with the bankruptcy process and

---

**1.** Warranties were extended by Rusty Jones between 1976 and 1988. Rust damage typically occurs in the fifth through the ninth year of ownership. Further, most vehicles are sold or traded during that time. Thus, the vast majority of claims under the warranties are made between the fifth and ninth years after issuance.

**2.** Section 502(c)(1) of the Bankruptcy Code provides that the bankruptcy court may estimate any unliquidated claim, the fixing of which, as the case may be, would unduly delay the administration of the case.

abandon their claims.[3] Judge Schmetterer also concluded that delaying the valuation procedures would serve little or no purpose. It would not make the procedures any less time consuming or expensive for the estate, nor would it change the rights of the interested parties to object.

Beatrice disagrees. It points out that the lawsuit against it is the principal asset of the estate and that if the valuation procedure goes forward now it is caught between Scylla and Charybdis. Beatrice does not know and cannot know at this time whether it will be found liable for any or all of the warranty claims. That will only be known when the trustee's lawsuit against it is concluded. If Beatrice participates in the valuation process now (and it is the only party with any real interest in opposing the valuation of the claims), it does so under bankruptcy rules that assume the validity of the claims and require the opposing party to disprove them. In addition, Beatrice will be required to spend millions of dollars opposing these claims when it later may be found not responsible for any of them. On the other hand, if Beatrice does nothing, it will be confronted at the time of trial with an argument from the trustee that it is collaterally estopped to deny the valuations of the bankruptcy court.[4] Beatrice also points out that a valuation process now serves little purpose. Since no distribution is contemplated now,[5] time can only benefit the valuation process. Over the next few years, many of the TBD claims will become liquidated; i.e., rust will appear on the warranted vehicles. Many other vehicles will be sold without rust damage, eliminating those claims.

We conclude that the bankruptcy court order requiring that the valuation process take place now should be reversed. Although we recognize that wide discretion must be accorded the bankruptcy court, we simply cannot find any viable reason for requiring the valuation process to proceed now.

It is clear that no distribution to the warranty holders is likely to go forward in the near future even if the estimation proceedings set forth by the bankruptcy judge are initiated immediately. The estate currently has only $1.4 million (less administrative expenses) to cover (among other things) warranty claims that well may total over $150 million. The costs of any distribution would total hundreds of thousands of dollars.[6] Thus, even if the claims are valued now, distribution prior to the conclusion of the Beatrice suit would be purposeless.

Fixing the liability of the estate on the liquidated claims has some immediate benefit. Claimants who are able to prove rust damage and the amount of that damage will be benefitted by having a judicial determination that values their claim now. Those individuals need not be concerned about subsequent sale of their vehicles and retaining necessary documentation to prove the loss in resale value. Further, they will be less likely to move without forwarding addresses or to abandon their claims in disgust. Nevertheless, a judicial determination is of little value without an actual distribution of money.

Fixing the estimated liability to the estate on the contingent warranty claims

---

**3.** Several thousand claimants have written to the trustee or the bankruptcy court to express their pique with the perceived interminable delays.

**4.** At oral argument, the trustee's counsel conceded that it would raise the collateral estoppel issue before Judge Williams. Beatrice has asked us to rule on that question now. We decline to do so since this would constitute an advisory opinion. Further, our decision here effectively moots this question.

**5.** We discuss the possibility of distribution more below. However, we note here that the bankruptcy court's decision, while somewhat ambig-

uous, seems to suggest that even under the accelerated proceedings, distribution would be stayed until after the Beatrice litigation is over. ("Opinion on Procedures to Resolve Disputed Warranty Claims," 143 B.R. 499, 506 (Bnkr. N.D.Ill.1992).) The parties agreed at oral argument that this was their understanding of the bankruptcy court's order.

**6.** The trustee, at oral argument, advised that $80,000 is expended every time a simple notice is sent to the warranty holders. The costs of a hearing with experts and the distribution process would be a substantial multiple of that number.

(TBD claims) at this time has almost no benefit. All that can be done now is to estimate their number and value. But as pointed out, there are no assets to distribute. And, while early determination of the claims arguably saves some time—it eliminates the need for such a hearing at the conclusion of the Beatrice lawsuit—this small savings in time is, in our view, of little consequence.

Balanced against the minimal advantages to the estate and the warranty claimants are a myriad of problems, many of which may unduly burden the trustee and Beatrice, and result in the needless expenditure of millions of dollars. Beatrice has participated in the bankruptcy of Rusty Jones. Actually, at one time it was a creditor, but its claim has apparently been resolved. Beatrice, however, remains vitally interested in the bankruptcy proceeding and the valuation of the warranty claims because it may be held liable for all of them in the case before Judge Williams. Thus, under the bankruptcy court's order, Beatrice has a difficult if not impossible choice. It can ignore the valuation process, and risk that it will be met with an argument from the trustee that it is collaterally estopped from challenging the valuation of the warranty claims at its trial.[7] On the other hand, it can participate in the valuation process and be required to deal with hundreds of thousands of claims for which it ultimately may have no liability. (Beatrice expects to be able to convince Judge Williams to bifurcate its trial and reserve discovery and trial on damages until after its liability has been determined.)

Quite apart from Beatrice's problems (and its concerns are not as compelling as those of Rusty Jones's creditors), conducting the valuation process now will not benefit the contingent claimants. No individual valuation can be made on the TBD claims since, by definition, none of these claimants have sustained any damage. The number of those claims that will become liquidated can be estimated, and an educated guess can be made as to their value. But no funds can be distributed. After the Beatrice suit is resolved, on the other hand, many more of the TBD claims will have become liquidated; that is, a percentage will have experienced rust damage. A large number will drop out of the claimant group because they sold or traded their vehicles and had no rust damage. Thus, if this valuation process is delayed until the assets available to the estate are known, there will be more liquidated claims and the claims to be estimated will be substantially reduced. This should benefit ·the estate and its creditors.

As to the liquidated claims, we believe delay will benefit this class as well. At the present time, the liabilities of the bankrupt so outweigh its assets that an informed customer with a liquidated claim will have little interest in whether his claim is granted, reduced, or denied. If the true liability of Rusty Jones under its warranties is over $100 million and the Beatrice suit is lost or settled for a modest amount, a claimant will realize only a few cents on each dollar of his claim. Thus, few claimants, knowing these facts, are likely to participate. On the other hand, if the trustee is successful in its claim against Beatrice, the claimant has the potential to make a substantial recovery on his claim and will have a vital interest in the outcome of the valuation hearing. It seems fruitless to go through an evaluation process now when even the liquidated claimants have no idea as to what their potential recovery is likely to be.

Finally, in terms of the valuation process itself, it seems clear that the trustee will be required to expend far more time and money evaluating claims that will recover fifty or seventy-five percent of their value than he will if the recovery is to be only a few pennies on the dollar. Moreover, after the Beatrice litigation is resolved, Beatrice will have no further interest in the bankruptcy proceedings and the evaluation process can be based on the trustee's determination without the necessity of a prolonged adversarial proceeding with Beatrice fighting every step of the way.

---

**7.** The collateral estoppel doctrine is a difficult one, and we do not discuss it here. Suffice it to say that Beatrice has demonstrated in its brief the possibility that the bankruptcy proceedings may be binding upon it under certain circumstances.

The claimants are justifiably upset, and Judge Schmetterer's concern that delay will cause attrition in the group is certainly correct. However, this concern can be alleviated at least in part by a notice (none has been set for nearly two years) that provides each claimant with a status report on the assets and the liabilities and the plans to evaluate the claims at the conclusion of the Beatrice trial.[8]

We conclude by recognizing that Judge Schmetterer was acting out of a desire to protect the claimants and to move a bankruptcy case that has been too long before him. We also believe that the procedures he recommends to evaluate the claims are reasonable and appropriate.

We thus reverse the bankruptcy court order only as to its requirement that the valuation process proceed at the present time. These proceedings could begin at the conclusion of the Beatrice litigation at the district court level. It seems to us that this may be an appropriate time to hold the valuation proceedings because an initial judicial determination will have been made as to Beatrice's liability and, if appropriate, the recovery for the estate.

---

**8.** At oral argument, counsel for the trustee suggested that if a notice is required, Beatrice should be required to pay a part of the cost of that notice. That argument should be addressed to the sound discretion of the bankruptcy court.