# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-4084

In the matter of: KMART CORPORATION, *et al.*,

*Debtors-Appellees*,

Appeal of: WILHEMINA SIMMONS,

*Appellant.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 96—**Amy J. St. Eve**, *Judge.*

_____

ARGUED APRIL 9, 2004—DECIDED AUGUST 27, 2004

_____

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.*

## I. Background

Kmart, Corp. filed a petition for relief under Chapter 11
of the Bankruptcy Code on January 22, 2002 ("Petition
Date"). On March 26, 2002, the bankruptcy court entered an
order establishing July 31, 2002 as the deadline for filing
proofs of claim ("Original Bar Date" or "Bar Date"). *See* Fed.
R. Bankr. P. 3003(c)(3) (The "court shall fix and for cause
shown may extend the time within which proofs of claim or

interest may be filed."). Later, upon Kmart's motion, the bankruptcy court established a supplemental bar date of January 22, 2003 ("Supplemental Bar Date") for a limited set of pre-Petition Date creditors who had not previously been sent notice of the Original Bar Date. *See id.*

Appellant Simmons suffered a fall in a Kmart store in St. Croix, U.S. Virgin Islands, on December 13, 2001. She sought to pursue a $750,000 pre-Petition Date personal-injury claim against Kmart based upon her accident, which she asserts was caused by a malfunctioning store door. Notice of the Bar Date was sent to Simmons at her address as listed in the files of Kmart's third-party claims administrator, Trumbull Services. The mailing was never returned to Kmart as "undeliverable." However, Simmons asserts that she never personally received the notice because the address used by Trumbull was not her actual mailing address. Nonetheless, it is undisputed that Simmons's attorney had actual knowledge of the Original Bar Date, as her counsel had filed timely proofs of claims for over two dozen other Kmart creditors.

Despite counsel's awareness of the Original Bar Date, Simmons's proof of claim was untimely, delivered to Kmart one day after the Bar Date on August 1, 2002. Apparently, on July 30, the day before the Bar Date, Simmons's attorney delegated to an office clerk the task of mailing Simmons's proof of claim. Unfortunately for Simmons, the clerk waited until around two o'clock in the afternoon before attending to the assignment. Either because of an oversight by the clerk or because the post office refused to guarantee a next-day delivery given the late hour, the clerk checked the box for "Second Day Delivery" on the mail delivery instructions and the package arrived one day later than Simmons and her attorney intended.

Moreover, although the claim form recommended that claimants include a self-addressed stamped envelope so that Trumbull could mail verification of its receipt of the form to

the claimant, Simmons's attorney did not do so. Nor did counsel make any follow-up phone calls to ensure that the proof of claim was timely received. As a result, Simmons (through counsel) did not realize that her filing was late until September 23, 2002, when a notice from Kmart was received, informing Simmons that her claim was now barred. For unknown reasons, Simmons's attorney then waited until October 21, 2002 to move under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure for Simmons's proof of claim to be deemed timely filed.[1]

Evaluating whether Simmons's late filing was the result of "excusable neglect" as required under Rule 9006(b)(1), the bankruptcy court considered the four factors established in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). On November 19, 2002, the court denied Simmons's motion to deem her claim timely filed.

Simmons again tried to avoid the effect of her late filing by moving to have her claim covered by the Supplemental Bar Date. On February 5, 2003, the court reasoned that because her attorney had actual notice of the Bar Date,

---

[1] Bankruptcy Rule 9006(b) provides:

Enlargement.

> (1)  In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. (emphasis added)

Simmons could not properly be considered one of the limited set of creditors to whom the Supplemental Bar Date applied. The court denied Simmons this "second bite of the apple."

The district court consolidated her subsequent appeals and ultimately upheld both of the bankruptcy court's rulings. For the following reasons, we affirm.

## II. Analysis

Our de novo review of the district court's decision to affirm the bankruptcy court allows us to assess the bankruptcy court's judgment anew, employing the same standard of review the district court itself used. *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004) (citing *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002)). The bankruptcy court's refusal to deem Simmons's claim timely filed will be overturned only in extreme cases, when the bankruptcy court has abused its discretion. *See In re Singson*, 41 F.3d 316, 320 (7th Cir. 1994). Likewise, we review the bankruptcy court's refusal to apply the Supplemental Bar Date to Simmons's proof of claims—a ruling essentially construing the import of the court's prior order establishing the Supplemental Bar Date—for an abuse of discretion. *See In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994). In general terms, a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied. *Corporate Assets*, 368 F.3d at 767 (citing *United States v. Jain*, 174 F.3d 892, 899 (7th Cir. 1999); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 739 & n.4 (7th Cir. 1998)).

### A. Motion to Deem Simmons's Claim Timely Filed

As we noted above, because Simmons's proof of claim was filed one day after the Original Bar Date, she moved to have her claim deemed timely filed under Rule 9006(b). Under Rule 9006(b), a bankruptcy court may, in its discretion, grant such relief if the late filing was the result of "excusable neglect." In its 1993 *Pioneer* decision, *supra*, the Supreme Court established four factors to guide courts' excusable neglect analyses. Specifically, a court assessing whether to grant a motion under Rule 9006(b) to have a late-filed proof of claim deemed timely must evaluate "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith." 507 U.S. at 395. Simmons does not dispute that the bankruptcy court correctly considered the four factors outlined by *Pioneer*. Instead, Simmons posits that the court's factual determinations with respect to each of the factors were clear error and that its ultimate decision to deny her Rule 9006(b) motion was therefore an abuse of discretion. We disagree.

### 1. Danger of prejudice to Kmart

The bankruptcy court determined that allowing Simmons's claim would cause prejudice to Kmart. Simmons aptly points out that Kmart's first amended plan of reorganization was filed on February 25, 2003 and confirmed on April 23, 2003, nearly eight months after the Original Bar Date. Therefore, the debtor Kmart, who had received Simmons's proof of claim on August 1, 2002, was on full notice of her claim and could have easily taken it into account when it drafted its reorganization plan (and in structuring any economic models used to create the plan). *Cf. O'Brien Envtl. Energy, Inc. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy,*

*Inc.)*, 188 F.3d 116, 126 (3d Cir. 1999) (laying out factors for assessing prejudice under *Pioneer*, including whether the debtor had knowledge of the claim at the time the reorganization plan was filed or confirmed, and whether the late filing would disrupt the plan or economic models used in the plan's development). Likewise, because the Supplemental Bar Date was in the offing at the time of Simmons's Rule 9006(b) motion, Kmart was indisputably still in the process of identifying other claimants. Hence, Simmons posits, there was no prejudice to Kmart as a result of Simmons's tardy filing.

The bankruptcy court did not address these particular facts in its *Pioneer* analysis, but instead emphasized Simmons's delay in bringing the Rule 9006(b) motion, which we address in detail below, and the size of her claim, $750,000, characterizing it as "no small amount." Allowing Simmons's late-filed claim could induce other similarly sized late-claimants to so petition the bankruptcy court. *See In re Specialty Equip. Cos. Inc.*, 159 B.R. 236, 239 (Bankr. N.D. Ill. 1993). And while it is true that Simmons's claim represents only a small fraction of the approximately $6 billion total of unsecured claims against Kmart, if the bankruptcy court allowed all late-filed claims of nearly a million dollars where a simple "innocent mistake" (see our detailed discussion of Simmons's "reason" for the delay below) was to blame for the tardiness of the proof of claim, we think Kmart could easily find itself faced with a mountain of such claims, with a corresponding price tag in the millions of dollars. Perhaps this would be a different case had Simmons's claim only asserted, say, $75,000 or $80,000 in damages. In any event, the bankruptcy court knew the total number of claims against Kmart, and still found that Simmons's claim was "no small amount." It was in the best position to assess the relative size of Simmons's claim, and she has presented us with no reason here to disturb that judgment.

To conclude, although we do not find the bankruptcy court's reasoning overwhelmingly persuasive, because, at a minimum, reasonable minds could disagree as to the potential for harm to Kmart as a result of Simmons's delay, and given that it was Simmons's burden to prove a lack of prejudice to Kmart and not the inverse, we cannot say the bankruptcy court's finding as to this *Pioneer* factor was clear error.

### 2. Length of the delay and its impact on judicial proceedings

Simmons's proof of claim was only one day late, a fact which seems to support the grant of her Rule 9006(b) motion. However, the bankruptcy court not only considered this one-day delay, but also how long it took Simmons to get around to requesting judicial relief. A total of *eighty-one* days lapsed between the Original Bar Date and Simmons's filing of her 9006(b) motion. Although Simmons could have easily ascertained whether her proof of claim made it from the Virgin Islands to the mainland United States on time by either including a self-addressed stamped envelope with her proof of claim (as the claim form encouraged claimants to do) or by making a follow-up phone call to Trumbull, she chose not to do so. In fact, Simmons didn't realize that her filing was late until she received a notice from Kmart, *fifty-three* days after the Original Bar Date. Even more perplexing, Simmons waited an additional twenty-eight days to make her Rule 9006(b) motion. The bankruptcy court was well within its province to consider the total eighty-one day period of delay, as the court may consider "all relevant circumstances" in its excusable neglect analysis. *Pioneer*, 507 U.S. at 395.

Simmons makes much of three late-filed administrative claims also involved in the Kmart Chapter 11 proceedings, with delays somewhat similar to Simmons's, which the bank-

ruptcy court allowed. However, Simmons failed to include the court's unpublished orders addressing these claims in her appendix to this court, and as such, we cannot verify the veracity of her argument. *Cf.*, *Le Beau v. Libby-Owens-Ford Co.*, 727 F.2d 141, 147 (7th Cir. 1984) (parties relying on an unpublished order included such in appendix); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 763 n.4 (7th Cir. 1982) (same). Hence, we do not address it further except to say that these claims are distinguishable from Simmons because, according to her own brief, the three administrative claimants' Rule 9006(b) motions were not as tardy as Simmons's (two filing seventy days after the bar date, and one forty-eight days later).

Simmons also points to the fact that at the time of her Rule 9006(b) motion, the Supplemental Bar Date had not yet passed. But the due process concerns which necessitated the Supplemental Bar Date are not at all applicable to Simmons, *see infra* Part II.B.

Regardless, bar orders serve an indisputably integral purpose in facilitating reorganizations. The Second Circuit put it well:

> A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization. . . . If individual creditors were permitted to postpone indefinitely the effect of a bar order so long as adversary proceedings were pending, the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.

*In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991). Therefore, we conclude that the bankruptcy court's finding as to the length of delay and its concomitant negative impact on judicial proceedings was not clear error.

### 3. Reason for the delay

Simmons states in her brief to this court that "[t]he reason for the delay . . . was nothing more than an innocent mistake in mailing the claim." In particular, Simmons points to the mail clerk's inadvertent selection of second-day delivery (rather than next-day) on the mailing instructions. Kmart counters that the mail clerk was forced to choose the second-day delivery option because the clerk arrived—whether by his or her own dereliction of duty or otherwise—at the post office after two o'clock in the afternoon and next-day delivery could not be guaranteed. Under either scenario, Simmons correctly characterized it as a reason for the delay. But we think it a poor one.

Three of our sister circuits have held that fault in the delay is the preeminent factor in the *Pioneer* analysis. *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) ("fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable.")); *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ("We have observed that the four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import." (internal quotation marks and bracket omitted)); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (same). Although we have not yet similarly held, *see United States v. Brown*, 133 F.3d 993, 996 (7th Cir. 1998), in this case, the factor is immensely persuasive.

First, Simmons's counsel left the filing of her proof of claim until the latest possible time. Second, Simmons's attorney delegated the mailing responsibilities to a clerk. And counsel took no steps to follow up with the clerk to ensure that the proper procedures were used. Third, and as we referenced above, Simmons could have taken at least

two simple measures to verify that her proof of claim arrived on time. We agree with the bankruptcy and district courts—the delay in filing Simmons's proof of claim was entirely within her control. Put more directly, it was her own fault.[2] The bankruptcy court's finding as to this factor was not clear error.

### 4.   Simmons's good faith

There is no dispute that Simmons attempted to file her proof of claim on time. However, we agree with the district court that "[i]t is not difficult to imagine stronger showings of good faith."[3] As we have highlighted above, Simmons's counsel left the filing of her proof of claim until the proverbial "eleventh hour," failed to follow up with the third-party claims processing agency to determine if the claim arrived on time, and then, after discovering that her proof of claim arrived after the deadline, waited nearly a month before seeking judicial relief. These efforts cannot be called extraordinary or even particularly diligent. Consequently, we find that this factor is inconclusive; it neither supports nor undercuts the bankruptcy court's ultimate determination.

To summarize our findings, the bankruptcy court's factual determinations as to each of the *Pioneer* factors it analyzed

---

[2] As a general proposition and the for the purposes of the Rule 9006(b) "excusable neglect" analysis at issue here, the failings of the attorney may be attributed to the party. *Pioneer*, 507 U.S. at 396-97, *cited in In re Scheri*, 51 F.3d 71, 75 (7th Cir. 1995).

[3] The bankruptcy court made no express findings as to the good faith factor in its *Pioneer* analysis. Such an omission by the bankruptcy court does not, as Simmons suggests, necessitate that we remand for consideration of this factor. Our analysis demonstrates that the bankruptcy court did not abuse its discretion when it denied Simmons's Rule 9006(b) motion.

were not clear error. As such (and because the fourth factor, good faith, which was not addressed by the bankruptcy court, neither strongly hinders or helps Simmons's cause), we conclude that the court's decision to deny Simmons's Rule 9006(b) motion was not an abuse of discretion. Moreover, even if we did take issue with the bankruptcy court's determination as to the prejudice component (the only factual finding remotely questionable), given Simmons's reticence in rectifying the impact of the "innocent mistake" and that ultimately this mistake is attributable to no one except Simmons, the *Pioneer* factors would then be at an equipose, thus necessitating our affirmance of the bankruptcy court's ruling. Neither approach reveals any abuse of the bankruptcy court's discretion.

### B. Motion to Apply the Supplemental Bar Date to Simmons's Claim

As required, Kmart initially sent notice of the Original Bar Date to approximately one million potential claimants, including those listed on Kmart's schedules of liabilities (which are filed with the bankruptcy court) and numerous others, who were unlisted.[4] After Kmart learned that it had inadvertently failed to send notice of the Bar Date to approximately 4,000 claimants, most of whom did not ap-

---

[4] Kmart explained that when it sent out this initial notice, its objective was to "make extra sure that we had noticed the world as broadly as possible," including not only clearly legitimate claimants, but also those Kmart believed had "no basis on which they could be construed creditors." Hence, notice was sent to both scheduled and unscheduled putative claimants. Kmart further explained that had it attempted to include all of these million possible claimants on the schedules which it filed with the bankruptcy court, such schedules would have been "about 100,000 pages long." Since, in Kmart's view, such a filing would be impracticable, none was attempted.

pear on Kmart's schedules, Kmart petitioned the bank-ruptcy court to establish the Supplemental Bar Date in an effort to rectify any due process problems—namely, that claimants without notice of Kmart's bankruptcy and the Bar Date might have irretrievably forfeited their rights. The bankruptcy court did so.

After Simmons's Rule 9006(b) motion was denied, she attempted to gain the benefit of the Supplemental Bar Date. The bankruptcy court denied this request as well, reasoning that Simmons should not be given a "second bite of the apple" because her attorney indisputably had actual knowledge of the Original Bar Date. In so ruling, the bank-ruptcy court in effect construed the meaning of its prior order establishing the Supplemental Bar Date. As such and as we stated earlier, we review the court's denial of Simmons's re-quest only for an abuse of discretion. *See Taylor v. Prudential Sec. Inc. (In re VMS Sec. Litig.) (In re VMS Ltd. P'ship Sec. Litig.)*, 103 F.3d 1317, 1321 (7th Cir. 1996) (citing cases); *In re Weber*, 25 F.3d at 416.

Given our circumscribed review, we conclude without dif-ficulty that the bankruptcy court did not abuse its discre-tion. In that Simmons was not listed on any of Kmart's schedules and never physically received notice of the Bar Date from the debtor (we assume *arguendo*), she was like many of the creditors to whom the Supplemental Bar Date applied. Nonetheless, she is distinguishable in one key respect. Simmons's counsel had actual knowledge of the Original Bar Date. And the attorney's knowledge is chargeable to the client. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 92 (1990). *See also Pioneer*, 507 U.S. at 396-97; *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 459 (7th Cir. 1988). In addition and as we noted above, the Supplemental Bar Date was established to alleviate potential due process prob-lems. But because Simmons and her attorney both had knowledge of the Original Bar Date, there was no such due process concern with respect to Simmons. The bankruptcy

court's reasoning was sound, and its ruling was not an abuse of discretion.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
***Clerk of the United States Court of***
***Appeals for the Seventh Circuit***