ORDER
James and Dannette Bell, having lost a six-year fight to save their house from foreclosure, appeal from the district court’s order upholding a bankruptcy judge’s decision dismissing their most recent bankruptcy case and barring them from filing another for 365 days. We affirm the district court’s judgment.
On February 12, 2004, the day before a scheduled foreclosure sale on their home, the Bells filed for relief under Chapter 13 of the bankruptcy code, which triggered an automatic stay under 11 U.S.C. § 362 and thwarted the sale. This bankruptcy petition was the Bells’ tenth since 1994 and their fifth since Litton Loan Servicing, Inc., which holds the Bells’ mortgage, initiated foreclosure proceedings in 1999. In fact the Bells’ ninth bankruptcy case, a Chapter 7 liquidation, was still pending before a different bankruptcy judge when they filed this latest one. Litton responded by asking the court to annul the automatic stay and dismiss the underlying case with prejudice, see 11 U.S.C. § 349(a), and bar the Bells from bringing yet another case for 365 days. On March 11, 2004, after verifying that the Bells’ ninth bankruptcy case was still pending, the bankruptcy court annulled the Chapter 13 stay as to Litton, reasoning that the Bells could not have two open cases with the same assets. At the same time the court scheduled a hearing on Litton’s motion to dismiss, explaining that it fully intended to dismiss the most recent case and was undecided only about the filing bar. Since the automatic stay in the Bells’ ninth case had already been modified to allow Litton to proceed with its foreclosure sale, the lender proceeded to reschedule the sale for April.
On March 16, 2004, the Bells’ ninth bankruptcy case was closed. Then on April 12, one day before the rescheduled foreclosure sale, the Bells moved to “strike” their February 2004 petition, characterizing it as a “nullity.” The Bells theorized that the automatic stay prompted by that tenth bankruptcy case would have to be reinstated if the bankruptcy court were to strike the petition. The bankruptcy court conducted a hearing on the Bells’ motion and denied it in open court the same day it was filed. That ruling prompted Mr. Bell (a lawyer no longer admitted to practice) to announce his intention to immediately file yet another Chapter 13 case despite warnings from the court that sanctions likely would follow. When Mr. Bell persisted, the bankruptcy judge decided to conduct the hearing on Litton’s motion to dismiss that afternoon following a 2^-hour recess. To be safe the court also issued an order barring the Bells from filing any new case during the recess.
The Bells did not return for the afternoon hearing, so the bankruptcy court proceeded without them and deemed Litton’s motion uncontested. The court made the *56 following findings of fact: the Bells had filed ten petitions since 1994, five for the purpose of stopping the foreclosure; they filed their tenth petition one day before the scheduled foreclosure sale; they knew from earlier hearings that the court intended to address Litton’s motion to dismiss; Mr. Bell’s express intention to file another petition led the court to accelerate the hearing on Litton’s motion; and the Bells were late in filing their Chapter 13 plan. On the basis of these findings, the court concluded that the Bells had filed their February 2004 petition in bad faith solely to interfere with the foreclosure sale, and that they were “using the bankruptcy system in an abusive way simply to retain custody or possession of an asset which they are not willing and able to pay for.” Characterizing the situation as “extraordinary,” the court dismissed the Chapter 13 case and enjoined the Bells from filing again for 365 days.
On April 13, 2004, the Bells’ house was sold. That same day they filed an appeal in the district court, arguing that because they had a pending bankruptcy case at the time they filed the February 2004 Chapter 13 petition, the bankruptcy court lacked jurisdiction over their February 2004 petition and so all orders entered by the bankruptcy court in that case were void. It followed, the Bells explained, that the district court should unwind the foreclosure sale of their house. On June 16, 2004, the district court affirmed the bankruptcy court, concluding that the Bells’ arguments were without merit.
The Bells argue here that the district court decided their appeal using the wrong standard of review, and that it wrongly upheld the bankruptcy court’s annulment of the automatic stay. The Bells also fault the district court for not holding that the bankruptcy judge failed to give them adequate notice of its intention to decide Litton’s motion to dismiss; we see no evidence that the Bells even raised this argument in the district court, but Litton does not assert waiver.
We review the district court’s judgment de novo, essentially looking at the bankruptcy court’s decision anew using the same standard of review the district court would have used. In re Kmart Corp., 381 F.3d 709, 712 (7th Cir.2004). That we are not bound by the district court’s analysis is enough to answer the Bells’ first claim of error. Moreover, if dismissal of the Bells’ Chapter 13 case was appropriate, then any argument about the automatic stay is irrelevant. See In re Statistical Tabulating Corp., 60 F.3d 1286, 1289-90 (7th Cir.1995); In re Income Prop. Builders, Inc., 699 F.2d 963, 964 (9th Cir.1982). We focus, then, on whether the Bells were given an adequate opportunity to defend against Litton’s motion to dismiss, and on whether the dismissal was proper.
A bankruptcy court may dismiss a case “after notice and a hearing,” 11 U.S.C. § 1307(c), which means “notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances,” 11 U.S.C. § 102(1)(A). In this instance the bankruptcy judge had stated in open court on March 11 that she fully intended to dismiss the Bells’ case, and that all that needed to be decided was whether the dismissal should be entered with prejudice and accompanied by a filing bar. The court gave the Bells time to file a brief on them position, and when Mr. Bell appeared on April 12 to argue the Bells’ newly filed motion to “strike,” he informed the court that the Bells’ brief on that motion would also serve as their response to Litton’s motion to dismiss. The bankruptcy court was initially inclined to hear Litton’s motion on a later date and to give the Bells even more time to file a supplemental re *57 sponse, but that indulgence ended when Mr. Bell alerted the court that he was about to file another bankruptcy petition to stop the foreclosure sale scheduled for the next day. The court appropriately accelerated the hearing on Litton’s motion and set it for that afternoon to preclude the Bells from further abusing the system. Given the situation they created, the Bells received “notice as is appropriate in the particular circumstances,” 11 U.S.C. § 102(1)(A), and we will not fault the bankruptcy court for going ahead when the Bells elected not to appear later that afternoon.
Nor do we perceive any error in the ruling on Litton’s motion. A bankruptcy court may dismiss with prejudice “for cause” and preclude the debtor from further filings. 11 U.S.C. § 362(d)(1); In re Hall, 304 F.3d 743, 746 (7th Cir.2002). Dismissals with prejudice are reserved for extreme situations, including those where a debtor files unauthorized petitions, acts in bad faith, conceals information from the court, or violates injunctions. In re Hall, 304 F.3d at 746. In this case the bankruptcy court found that the Bells had engaged in bad faith, a factual determination that we will uphold absent clear error. In re Smith, 286 F.3d 461, 465 (7th Cir.2002).
To determine whether a Chapter 13 petition has been filed in bad faith, a bankruptcy court must consider the “totality of circumstances,” including the nature of the debt, the timing of the petition, the debt- or’s motivation in filing the petition, the effect of the filings on the creditors, the debtor’s treatment of creditors both before and after the petition was filed, and whether the debtor has been forthcoming with the bankruptcy court and the creditors. In re Love, 957 F.2d 1350, 1357 (7th Cir.1992); In re Smith, 848 F.2d 813, 821 (7th Cir.1988). The court may also inquire whether, under the circumstances of the case, the debtor abused the provisions, purpose, or spirit of the bankruptcy process. In re Love, 957 F.2d at 1357. Plainly in this instance the bankruptcy court acted within its discretion in finding bad faith. That the Bells filed their tenth petition on February 12 and then on April 12 announced an intention to file another— both times on the day before the scheduled foreclosure sale of their house—is ample evidence that, as the bankruptcy court found, their February petition was filed solely to impede the foreclosure sale. The Bells’ other four petitions filed after Litton commenced foreclosure proceedings in 1999 only reinforce that conclusion. See In re King, 126 B.R. 777, 781 (Bankr. N.D.Ill.1991) (“Strategic use of serial filings, particularly when coupled with failure to carry out debtor’s duties in bankruptcy, shows lack of good faith justifying dismissal.”); In re Smith, 58 B.R. 603, 605 (W.D.Pa.1986) (multiple filings and filings immediately prior to sheriffs sales created inference of abuse of the bankruptcy process).
Accordingly, the judgment of the'district court is AFFIRMED.