**GLIDDEN COMPANY d/b/a ICI Paints and CRI Steering Committee, Appellants,**

**v.**

**FV STEEL AND WIRE COMPANY, Appellees.**

**Glidden Company d/b/a ICI Paints and CRI Steering Committee, Appellants,**

**v.**

**FV Steel and Wire Company, Appellees.**

**Nos. 05C1355, 05C1356.**

United States District Court,
E.D. Wisconsin.

Sept. 21, 2006.

---

Jeffrey Michael Sutherland, Jonathan S. Covin, Carrington Coleman Sloman & Blumenthal LLP, Dallas, TX, for Appellants.

Joel L. Herz, Law Offices of Joel L. Herz, Tucson, AZ, for Appellees.

## DECISION AND ORDER

ADELMAN, District Judge.

In April 1989, the Environmental Protection Agency ("EPA") named the Glidden Company ("Glidden"), the Sherman Wire Company ("Sherman") and other entities as potentially responsible parties ("PRPs")[1] with respect to a hazardous waste site, the Chemical Recycling, Inc. site (hereinafter "Site") in Wylie, Texas. In May 1989, a number of PRPs, including Glidden and Sherman, entered into an agreement ("the Agreement") to manage the cleanup in compliance with the EPA's remedial plan. Participation in the Agreement was voluntary, and PRPs could withdraw from it at any time. The Agreement created the CRI Steering Committee ("committee") to coordinate the efforts of the participating PRPs and assess costs to participants related to their potential liability. With the committee's agreement, the EPA issued an Administrative Order on Consent ("Order") governing cleanup of the site. Since 1989, the participants have

1. The acronym "PRP" refers to a party who may be liable for environmental cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

contributed significant amounts to the cleanup.

On February 24, 2004, Sherman filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. The committee and Glidden (together, "claimants") filed claims against the bankruptcy estate seeking to collect the costs of cleanup remaining to be performed at the Site. In February 2005, Sherman withdrew from the Agreement. Neither when it withdrew from the Agreement nor when it filed for bankruptcy did Sherman owe any unpaid assessments under the Agreement. Subsequently, Sherman and claimants filed cross-motions for summary judgment. The EPA did not file its own claim against Sherman but filed a "Statement of Position" in support of claimants' summary judgment motion. The bankruptcy court granted Sherman's motion and denied claimants'. Claimants moved for reconsideration and moved to amend their claim to assert a timely-filed claim on behalf of the EPA or to file a new late claim on behalf of the EPA. The court denied their motions.

Pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8001(a), claimants appealed from the bankruptcy court's decisions, and their appeal is before me now.

## I. MOTIONS FOR SUMMARY JUDGMENT AND RECONSIDERATION

The parties' summary judgment motions and claimants' motion to reconsider raise the same question—whether claimants' claims are viable under either the Agreement or sections of CERCLA that provide private causes of action. Claimants concede that whatever claims they have arise from *future* cleanup that they might undertake at the Site. The bankruptcy code provides for such "contingent" claims, the viability of which depends on the occurrence of an event or events in the future.

Bankruptcy courts value contingent claims based on the likelihood that the contingency on which the claim depends will occur. *See* 11 U.S.C. § 502(c)(1).

Because the question presented by the parties' motions is one of law, I review the bankruptcy court's rulings de novo. *In re Scott*, 172 F.3d 959, 966 (7th Cir.1999).

### A. Claim Based on the Agreement

■ Claimants first argue that their claims arise from future cleanup that Sherman may have to perform pursuant to the Agreement. The bankruptcy court found that because Sherman was free to withdraw from the Agreement at any time, the value of any future claim based on the Agreement "would properly be estimated at zero." (Sept. 27, 2005 Bankr.Ct. Decision at 5.)

Texas law governs the Agreement, and under such law I seek to ascertain the parties' intentions based on the language of the contract. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). I interpret the Agreement as it stood when Sherman filed for bankruptcy. *See* 11 U.S.C. § 502(b). The Agreement permits a participant to withdraw "whenever it regards its continued participation in this Agreement to be contrary to its interest." (Agreement at 12.) In order to withdraw, a participant need only provide "written notice to the CRI Steering Committee Chairman." (*Id.*) As such, the value of any claim on February 24, 2004, dependent both on Sherman being assessed cleanup costs in the future and on its deciding not to simply withdraw from the Agreement and avoid the costs, is highly conjectural. Therefore, the bankruptcy court properly valued the contingent claim against Sherman based on the

Agreement at zero.[2]

## B. Claims Based on CERCLA

■ The bankruptcy court also rejected claimants' assertion that their claims could arise under sections of CERCLA granting private parties the right to recover environmental cleanup costs. The court concluded that *Cooper Industries v. Aviall Services, Inc.*, 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), in which the Supreme Court held that PRPs could not bring contribution actions under CERCLA § 113(f)(1) unless the EPA or another party had first sued them, barred such claims.

Congress enacted CERCLA in 1980. Initially, federal courts construed CERCLA § 107(a), which grants a right of action to private parties that clean up a hazardous waste site, as authorizing PRPs to bring contribution claims against other PRPs. *Aviall*, 543 U.S. at 161–62, 125 S.Ct. 577. In 1986, Congress added CERCLA § 113(f)(1), which explicitly authorizes PRPs that undertake cleanups to sue other PRPs for contribution. *Aviall*, 543 U.S. at 162–63, 125 S.Ct. 577. After the enactment of § 113(f)(1), courts shifted, holding that PRPs could only assert claims under § 113(f)(1), not under § 107(a). *See, e.g., Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R. Co.*, 142 F.3d 769, 776 (4th Cir.1998); *Akzo Coatings v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994). In *Aviall*, the Supreme Court limited § 113(f)(1) so that only PRPs who undertook cleanup efforts after having been sued by the government or a private party could bring actions under it. 543 U.S. at 165–66, 125 S.Ct. 577.

In the present case, the bankruptcy court found that *Aviall* would preclude claimants from bringing CERCLA-based claims against co-PRPs in the future because claimants had not been sued by the government or by a private party. Thus, the court concluded that claimants could not have any contingent claims arising from CERCLA. On appeal, claimants argue that as of February 24, 2004, there was a possibility that they could bring a suit against Sherman in the future for cleanup costs under any of three CERCLA provisions: § 113(f)(3)(B), § 113(f)(1), or § 107(a).

As to claimants' first argument, they may not assert a claim against Sherman under § 113(f)(3)(B). Section 113(f)(3)(B) authorizes persons who settle with governmental entities to seek contribution from an entity that "is not a party to" the settlement. Sherman is a party to the settlement, i.e., the Order. In addition, § 113(f)(2) immunizes parties that settle with governmental entities from liability for "claims for contribution regarding matters addressed in the settlement." Finally, the Order provides that a defaulting party pay penalties to the EPA rather than to other parties to the Order. Thus, if Sherman did not discharge its responsibilities under the Order, only the EPA, not the claimants, could bring an action to enforce the Order.[3]

Turning to claimants' second argument, § 113(f)(1) authorizes persons to "seek contribution from any other person who is

---

**2.** Courts have sometimes reviewed bankruptcy courts' valuations of contingent claims under an abuse of discretion standard. See *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 136 (3rd Cir.1982); *see also Beatrice Co. v. Rusty Jones, Inc.*, 153 B.R. 535, 536 (N.D.Ill.1993). However, because I affirm the bankruptcy court's valuation under a de novo standard, I

need not address whether I could review its decision under a lower standard.

**3.** Whether Sherman has remaining responsibilities under the Order appears to be in dispute. Work outside the scope of the Order may need to be performed in the future.

liable or potentially liable under section 107(a) ... during or following any civil action, under section 106 ... or under section 107(a)." Claimants contend that because the EPA may bring an action against them in the future, they have a contingent § 113(f)(1) claim against Sherman which the bankruptcy court should have valued. I agree.

Under the bankruptcy code, a party may bring a claim in respect to "all legal obligations of the debtor, no matter how remote or contingent, so that such obligations will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 95–595, at 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6266. In the present case, although possibly unlikely, the EPA could bring a civil suit in the future against claimants relating to cleanup outside the scope of the Order. Because bankruptcy code § 502(c)(1) directs courts to value *any* contingent claim, the bankruptcy court should have assigned a value to claimants' contingent § 113(f)(1) claim, taking into account the likelihood that the EPA will bring a civil action against claimants in the future. Of course, if on remand the bankruptcy court assigns a value greater than zero to this claim, it will then need to determine whether 11 U.S.C. § 502(e)(1)(B) nevertheless bars the claim.[4]

■ I turn now to claimants' contention that they may assert a claim against Sherman under § 107(a). As discussed, courts initially read § 107(a) as authorizing PRPs to assert contribution claims against other PRPs, but when Congress enacted § 113(f), courts treated the new provision as providing the exclusive basis for contribution actions. In *Aviall*, the Court declined to determine whether PRPs could seek contribution under § 107(a), noting that §§ 107 and 113 "created 'similar and somewhat overlapping' remedies ... in that they both allow private parties to recoup costs from other private parties. But the two remedies are clearly distinct." 543 U.S. at 163 n. 3, 125 S.Ct. 577 (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 816, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)). In dissent, Justice Ginsburg noted that *Key Tronic* all but held that PRPs could bring contribution claims under § 107(a) and that prior to the enactment of § 113, courts had reached similar conclusions and "nothing in § 113 retracts that right." *Aviall*, 543 U.S. at 172, 125 S.Ct. 577 (Ginsburg, J., dissenting).

Since *Aviall*, two circuit courts and several district courts have held that when PRPs cannot bring contribution claims under § 113(f)(1), they may bring them under § 107(a). The Second and Eighth Circuits reasoned that *Aviall* altered their understanding of § 107(a) and that permitting PRPs that voluntarily undertake cleanup efforts to use § 107(a) would support CERCA's goal of encouraging voluntary cleanup. *Atl. Research Corp. v. United States*, 459 F.3d 827, 835–36 (8th Cir. 2006); *Consol. Edison Co. v. UGI Utilities*, 423 F.3d 90, 100 (2d Cir.2005). *But see E.I. DuPont De Nemours and Co. v. United States*, 460 F.3d 515 (3d Cir.2006) (finding that *Aviall* did not change its view that PRPs could not use § 107(a)). I

---

4. Section 502(e)(1)(B) would appear to bar such a claim. However, the issue may be more complicated than it seems because of the arguably competing interests underlying CERCLA and the bankruptcy code. See Francis E. Goodwyn, *Claims Estimation and the Use of the "Cleanup Trust" in Environmental Bankruptcy Cases*, 9 Am. Bankr.Inst. L.Rev. 769 (2001); see also Kenneth Maxwell, *Bankrupting CERCLA: Amending the Bankruptcy Code to Allow CERCLA Contingent Claims for Contribution*, 13 J. Energy Nat. Resources & Env't'l L. 432 (1993). The parties have not discussed § 502(e) in this appeal; thus, I will not do so either.

agree with the Second and Eighth Circuits and conclude that under *Aviall,* when PRPs may not bring contribution actions under § 113(f)(1), they may do so under § 107(a).

I reach this conclusion for several reasons. First, in *Aviall,* the Court found that by providing a savings clause in § 113(f)(1) stating that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 106 or section 107," Congress intended:

> to clarify that § 113(f)(1) does nothing to "diminish" any cause(s) of action for contribution that may exist independently of § 113(f)(1). In other words, the sentence rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for contribution available to a PRP. The sentence, however, does not itself establish a cause of action; nor does it expand § 113(f)(1) to authorize contribution actions not brought "during or following" a § 106 or § 107(a) civil action; nor does it specify what causes of action for contribution, if any, exist outside § 113(f)(1).

543 U.S. at 166–67, 125 S.Ct. 577. Thus, Congress could only have enacted the savings clause to preserve pre- § 113 case law authorizing PRPs to seek contribution under § 107(a).[5] This view is consistent with the notion that Congress enacted § 113(f)(1) to "clarify and confirm the right of a person ... liable under CERCLA to seek contribution from other potentially liable parties." S.Rep. No. 99–11 at

44 (1985), *quoted in United Tech. Corp. v. Browning–Ferris Indus.,* 33 F.3d 96, 100 (1st Cir.1994).

Additionally, allowing PRPs that cannot seek contribution under § 113(f)(1) to do so under § 107(a) is consistent with the language of § 107(a) and with the purpose of CERCLA. Section 107(a) authorizes "any person" who cleans up a waste site to seek contribution, and CERCLA "is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others." *Key Tronic,* 511 U.S. at 819 n. 13, 114 S.Ct. 1960; *see also Atl. Research Corp.,* 459 F.3d at 834–35 (stating that after *Aviall,* treating § 113(f)(1) as the exclusive remedy for PRPs that undertake cleanup work " 'no longer makes sense' ") (quoting *Consol. Edison,* 423 F.3d at 99). Further, permitting PRPs to seek contribution under § 107(a) is not contrary to Akzo Coatings, a pre-Aviall case in which the Seventh Circuit limited a PRP's ability to invoke § 107(a) where that PRP had access to § 113(f)(1).

Claimants argue that they have a contingent claim under § 107(a) because in the future they may undertake additional cleanup efforts without a judicial decree. I agree. Thus, on remand, the bankruptcy court should assign a value to such claim, taking into account the likelihood that claimants will undertake such efforts. Once again, if the court assigns to the claim a value greater than zero, it will have to determine whether the claim is barred by § 502(e)(1)(B). Further, although I have found that claimants may have contingent claims arising from either §§ 113(f)(1) and 107(a), claimants obvious-

---

**5.** The *DuPont* court approved a district court's view that the savings clause may simply clarify that PRPs that enter into judicially approved settlements with the EPA can bring contribution actions. 460 F.3d at 532–33. However, § 113(f)(3) specifically grants set-

tling PRPs the right to contribution—a right quite distinct from that conferred by § 113(f)(1). I think it unlikely that Congress enacted the § 113(f)(1) savings clause simply to restate another subsection.

ly cannot collect twice on the same claim. Thus, if the bankruptcy court does not find that bankruptcy code § 502(e)(1)(B) bars these claims, it will need to determine whether to value the claims under § 113(f)(1) or § 107(a).

## II. MOTION TO AMEND AND/OR FILE NEW CLAIM[6]

██ I review the bankruptcy court's denials of claimants' motions to amend and/or to assert a new late-filed claim for abuse of discretion. A court abuses its discretion when it bases its decision on an erroneous conclusion of law or on a clearly erroneous finding of fact, or when the record contains no evidence supporting its decision. *See In re Emil Stavriotis*, 977 F.2d 1202, 1204 (7th Cir.1992) (addressing a late-filed amended claim); *see also In re Kmart*, 381 F.3d 709, 712 (7th Cir.2004) (addressing a late-filed new claim).

### A. Motion to Amend

In a bankruptcy case, after the bar date for proofs of claim has passed, an "amendment is permitted to cure an obvious defect, describe the claim with greater specificity or plead a new theory of recovery on facts set out in the original proof." Alan N. Resnick, et. al., 9 *Collier on Bankruptcy* § 3001.09 (15th ed. rev.2005). A court should examine the amended claim closely to ensure that it is not a new claim against the estate disguised as an amended claim. *Id.* A court is permitted, though not required, to apply the liberal amendment guidelines of Fed.R.Civ.P. 15. *Stavriotis*, 977 F.2d at 1204; *see also* Bankr.R. 9014.

██ In the present case, claimants sought to amend their timely filed claim under 11 U.S.C. § 501(b) to add a claim on behalf of the EPA. Under § 501(b), "[i]f a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor ... may file a proof of such claim." If in the future, claimants and/or Sherman fail to perform work, either called for by or outside the Order, the EPA may undertake the work and hold claimants and/or Sherman liable for its cost. Thus, the EPA has a contingent claim against Sherman of which it has declined to file a proof. Section 501(b) appears to authorize claimants to prove the EPA's claim. *See In re Hemingway Transp.*, 993 F.2d 915, 927 (1st Cir.1993) (indicating that where a CERCLA PRP is barred from bringing a contingent contribution claim against a co-PRP debtor, it may prove the EPA's claim under § 501(b)). Nevertheless, the bankruptcy court did not abuse its discretion in denying claimants' motion to amend. The court appropriately focused on whether claimants sought to disguise a new claim as an amended claim, and found that the amended claim differed considerably from the original claim. I conclude that the bankruptcy court adequately analyzed claimant's motion and explained its reasons for denying it.

### B. Motion to File New Late Claim

 A claimant in a bankruptcy case may file a new proof of claim after the deadline only if he can show that his tardiness is due to "excusable neglect." Bankr.R. 9006(b)(1). A court may accept a late proof of claim even where the lateness resulted from "inadvertence, mistake, or carelessness." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d

---

**6.** Although I have determined that claimants may have contingent claims, I will also analyze whether the EPA has such a claim or claims. Again, on remand the bankruptcy court will need to use its equitable powers to ensure that claimants do not collect on the same claim twice.

74 (1993). Whether neglect is excusable is based on equitable considerations such as "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489.

■ In the present case, relying in part on *In re Eagle–Picher,* 131 F.3d 1185 (6th Cir.1997), claimants argued that they failed to timely file a claim on behalf of the EPA because of excusable neglect. In denying their motion, the bankruptcy court did not consider the *Pioneer* factors, instead stating that Seventh Circuit cases set a particularly high bar for excusable neglect and constrained it from granting claimants' motion: "[y]our big problem [in establishing excusable neglect]—I mean *[In re Eagle–Picher]* . . . is all well and good. But that's in the Sixth Circuit, and I'm in the Seventh. And I have bad cases like *K–Mart*—well, bad for you—like *K–Mart* and *Outboard Marine."* (Nov. 8, 2005 Hearing Tr. at 16.) The court expressed the view that it had little discretion concerning the issue, stating "[t]he *K–Mart* case is an example where they . . . filed a claim one day late. I mean, they're very, very tough here on timing . . . . [t]he standards for excusable neglect are too strict in this circuit, but I have to follow them." (*Id.* at 31.)

In concluding that Seventh Circuit cases such as *In re Kmart,* 381 F.3d 709 (7th Cir.2004), constrained it from engaging in an equitable analysis as called for in *Pioneer,* the bankruptcy court erred. In *Kmart,* the Seventh Circuit examined whether the bankruptcy court had *abused its discretion* in barring a claim filed one day late and concluded that the court had properly considered the *Pioneer* factors. 381 F.3d at 712–14. The Seventh Circuit reviewed the bankruptcy court's decision deferentially and stated that in analyzing excusable neglect, the court could consider all relevant circumstances. The Seventh Circuit indicated that although it did not find the bankruptcy court's reasoning persuasive, it did not commit "clear error." *Id.* at 714. Thus, contrary to the statements of the bankruptcy court in the present case, the Seventh Circuit is not "very tough . . . on timing," and it does not interpret excusable neglect more narrowly than the Supreme Court directed in *Pioneer.*

Because the bankruptcy court erroneously concluded that the Seventh Circuit analyzed excusable neglect more strictly than called for in *Pioneer,* it abused its discretion. On remand, the bankruptcy court should examine whether equitable factors, including those analyzed in *Pioneer* as well as possible additional factors unique to CERCLA claims, weigh in favor of granting claimants' motion to assert a late-filed proof of claim. *See Eagle–Picher,* 131 F.3d at 1191 (Boyce, J., concurring) (stating that entities that cause environmental harm should not be permitted to circumvent the goals of CERCLA by hiding "behind the shield of a bankruptcy claim"); *see also Hemingway Transport,* 993 F.2d at 926–27 (finding that the "harsh results occasioned by the Bankruptcy Code" with respect to a CERCLA claim may by mitigated by § 501(b)). The court should further determine whether claimants may properly use § 501(b) to assert a claim on behalf of the EPA.

### III. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that the bankruptcy court's rulings are **AFFIRMED IN PART AND REVERSED IN PART.**

**IT IS FURTHER ORDERED** that the case is **REMANDED** for further consideration in light of this decision.