**In re James E. SIMMONS, Debtor.**

**No. 05 B 03719.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 30, 2007.

Robert A. Habib, Law Office of Robert Habib, Chicago, IL, for Debtor.

Dana N. O'Brien, Pierce & Associates, P.C., Chicago, IL, for GMAC Mortgage.

### MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter is before the court on the Motion of GMAC Mortgage Corporation to Amend Order Confirming Case dated June 9, 2005 and/or Reconsider Disallowance of Additional Claim.[1]

*Background.*

James Simmons filed a Chapter 13 petition on February 4, 2005. On March 1, 2005, he filed a plan providing for $16,000 in mortgage arrears to be paid to GMAC Mortgage Corp., the holder of the mortgage lien on Debtor's residence, located at 8246 South Anthony, in Chicago, Illinois.

Thereafter, on March 23, 2005, GMAC filed a proof of claim asserting that $19,748.78 was the actual "Arrearage Amount Due." In a section of the claim

---

1. The court's oral ruling of August 30, 2007 was formatted into a written memorandum on December 7, 2007 for purposes of publication.

labeled "Remarks," GMAC indicates that the $19,748.78 consists of 24 monthly payments of $540.79 each for the period March 2003 through February 2005 (i.e., unpaid prepetition installments), plus $5,672.04 in attorneys' fees and costs, plus miscellaneous amounts for property preservation, property inspection, late charges, and bankruptcy fees. Several days later, on March 28, 2005, GMAC filed an objection to confirmation. One of GMAC's contentions in the objection was that the arrearages were understated in the plan and should have been in the amount of $19,748.78, i.e., the amount set forth in GMAC's proof of claim for arrearages.

On June 9, 2005, Debtor filed a modified plan, which, *inter alia,* increased the arrearage amount to $19,748, i.e. the amount—short only 78 cents—set forth in GMAC's objection to confirmation and in its proof of claim. The plan was confirmed by order entered that same date. (The confirmation order was subsequently amended to clarify that it was the modified plan, dated June 9, 2005, that had been confirmed.)

On April 26, 2007, almost two years after the plan was confirmed, GMAC filed a claim for additional prepetition arrearages in the amount of $15,317.51. In the "Remarks" section of the claim, GMAC indicates that it is an "additional claim filed in addition to all previously filed claims." It further states that it is for an "Escrow Advance."

Shortly thereafter, on May 10, 2007, GMAC filed the instant "Motion to Amend Order Confirming Case Dated June 9, 2005 and/or Reconsider Disallowance of Additional Claim." In the motion, GMAC acknowledges that the modified plan provided for arrearages in "the amount of the original claim filed." GMAC further explains that its "additional proof of claim" is for escrow advances to pay property taxes

on Debtor's behalf. GMAC asserts in the motion that it has advanced funds to pay property taxes for 1995, 1999, 2000, 2001, 2002, 2004, 2005, and portions of 2003 and 2006. In its reply in support of the motion, GMAC refers to the additional claim of $15,317.57 as a prepetition advance to pay the 1995, 1999, 2000, 2001, and 2002 property taxes.

***Discussion.***

 GMAC seeks to vacate the confirmation order under Fed.R.Civ.P. 60, made applicable by virtue of Bankruptcy Rule 9024. Under Rule 60(b)(1), relief from a judgment may be granted for "mistake, inadvertence, surprise, or excusable neglect." According to GMAC, the "plan was confirmed based upon a mistake of law," because the court was not aware that the plan modified GMAC's rights in violation of § 1322(b)(2). That section provides, in pertinent part, that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." GMAC appears to contend that the court made a "mistake of law," because the court "was not aware that confirmation ... modified [GMAC's] rights in violation of Section 1322(b)(2) by providing for less than the correct amount due and owing at the time this bankruptcy was filed." (Motion, ¶ 15).

The court did not, however, make a "mistake of law." Section 1322(b)(5) provides that notwithstanding the prohibition against modification of a residence mortgagee's rights contained in § 1322(b)(2), the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." GMAC's

original proof of claim purported to set forth the mortgage arrearages that needed to be "cured" pursuant to this provision. Indeed, GMAC specifically objected to confirmation of the original plan because it did not provide for the $19,748.78 arrearage amount set forth in GMAC's original proof of claim. The plan was modified to provide for the amount requested by GMAC, and there was no mistake on the part of the court in confirming a plan which was modified to provide the very arrearage amount requested by the mortgagee in its objection to confirmation and in its proof of claim.

GMAC similarly contends that the plan was confirmed based on a "mistake of fact," because "[t]he Court was not aware that Debtor's plan included an arrearage amount that was greatly underestimated." (Motion, ¶ 16). It is disingenuous at best for GMAC to suggest that the arrearage amount was an "estimate." Again, while the $16,000 in arrearages provided for by Debtor in his original plan may have been an "estimate," the $19,748 arrearage amount included in Debtor's modified plan was the very amount requested by GMAC in its objection to confirmation and in its original proof of claim. The court made no "mistake of fact" in this regard.

Any mistake here was made by GMAC, as it virtually concedes in its motion when it states:

"In complete error, inadvertence, and mistake, counsel for GMAC Mort gage Corporation let the plan confirm at its present terms of arrearage payments ... at $19,748.78. . . .

Counsel for GMAC Mortgage Corporation was unaware of the escrow advance. Said amount was inadvertently and mistakenly omitted from the original proof of claim."

(Motion, ¶'s 18–19). GMAC asserts, *inter alia*, that excusable neglect has been established.

■ GMAC's contention fails for several reasons. First, while GMAC clearly has established neglect within the purview of Rule 60(b)(1), it has failed to demonstrate that the neglect was excusable. Indeed, GMAC has offered no "excuse" at all; it merely states that the escrow advance was omitted from the original claim because counsel was unaware of the advance.

■ Although neglect may be excusable even where it is the result of carelessness on the part of a litigant or his attorney, not all carelessness is excusable. The Supreme Court concluded in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership* that the determination of whether neglect is "excusable"

is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

507 U.S. at 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

Moreover, the Seventh Circuit has noted, without deciding the issue, that three of its "sister circuits have held that fault in the delay is the preeminent factor in the *Pioneer* analysis." *In re Kmart Corp. (Appeal of Wilhemina Simmons)*, 381 F.3d 709, 715, (7th Cir.2004). In *Simmons*, the Court found the reason for the delay a "poor one" and "immensely persuasive" in the excusable neglect inquiry. *Id.*

Here, the only reason given for the neglect is counsel's lack of awareness that the escrow advances had been made, and the delay of almost two years in filing this motion is extraordinary. While GMAC's good faith has not been questioned, it certainly is chargeable with knowledge of the escrow advances that it made on Debtor's behalf. GMAC could and should have ascertained the amounts of those advances and communicated them to its counsel before allowing the Debtor to make payments under the plan for almost two years based on the very arrearage amount insisted upon by GMAC in its objection to confirmation and its proof of claim.

■ In addition, GMAC's request for relief under Rule 60(b)(1) is untimely; not only was it made more than one year after entry of the confirmation order, it was not made "within a reasonable time," as required by Rule 60(b).

■ Perhaps realizing that its request is untimely, GMAC alternatively seeks to proceed under Rule 3008, which allows for the reconsideration of orders allowing or disallowing claims. In this regard, Rule 9024 provides: "Rule 60 ... applies in cases under the Code except that (1) a motion ... for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b)...." GMAC seeks to proceed under Rule 3008 because there would be no time limitation for its motion under that provision. In order to come within the purview of that rule, GMAC characterizes the confirmation order as in effect "disallowing" its additional claim for the escrow advance. GMAC states that "[i]n confirming the debtor's plan ..., the court disallowed over $15,317.51 of GMAC Mortgage Corporation's prepetition arrearages." The confirmation order, however, confirmed the plan;

in entering that order, the court did not disallow—or even consider—GMAC's claim for the escrow advance, which was not filed until almost two years after the confirmation order was entered.

A further contention made by GMAC is that unless the plan is amended to provide for the escrow advance, the plan will have modified GMAC's rights in violation of § 1322(b)(2) and was therefore "improperly confirmed because it conflicted with [that section's] mandatory provisions." (Reply, at 2–3).

■ The court first notes that under § 1329(a), only the debtor, the trustee, or the holder of an allowed *unsecured* claim has the right to request modification of a plan after confirmation. Accordingly, GMAC's request to amend the plan, as an alternative to vacating the confirmation order, is not a request that is authorized under § 1329(a).

As for GMAC's contention that the plan was improperly confirmed, GMAC relies in part on *In re Carr,* 318 B.R. 517 (Bankr. W.D.Wis.2004), where Judge Martin in turn relied on the Seventh Circuit's decision in *In re Escobedo,* 28 F.3d 34 (7th Cir.1994). In *Escobedo,* the Seventh Circuit held that a Chapter 13 plan under which payments had already been completed was nonetheless "invalid for failing to include the mandatory provisions of § 1322(a)(2)" and that it "ha[d] no *res judicata* effect as to ... omitted priority claims." *Id.* at 35. In *Escobedo,* the debtor obtained confirmation of a plan calling for payments of $25 per month for 36 months. Thereafter, the Chapter 13 trustee filed a late objection to confirmation, asking the court to allow for the repayment of $24,158 in administrative and tax claims. The court "allowed the additional claims," subject to the filing of an objection by the debtor within ten days. *Id.* at 34.

The debtor never objected and she also never modified her plan to accommodate the additional claims. She did, however, continue making the $25 monthly payments beyond the specified 36–month plan term. Almost two years after the debtor's last payment was made (and nearly five years after confirmation), the trustee moved to "either modify the Plan's payment schedule (so as to include me already allowed administrative and tax priority claims) or dismiss the Plan altogether." *Id.* The bankruptcy court "dismissed [the] Plan [sic]," and the district court affirmed.

On appeal, the Seventh Circuit held that because the plan failed to account for full payment of all priority claims as required by § 1322(a)(2), the bankruptcy court lacked authority to confirm the plan, and the "supposed confirmation was nugatory and properly dismissed." *Id.* at 35. The Court noted that while the requirements of certain Code provisions, such as § 1325(a)(5), may be discretionary, those contained in § 1322(a)(2)—calling for full payment of priority claims—are mandatory. *Id.*

In *In re Ayre*, 360 B.R. 880 (C.D.Ill. 2007), District Judge Scott distinguished *Escobedo* in a case that also involved priority tax claims entitled to the protections of § 1322(a)(2). In *Ayre*, the debtors filed a plan which stated that the Illinois Department of Revenue ("IDOR") asserted a priority claim for $104,039.80. The plan further stated that the debtors disputed the claim and proposed to pay $ 10,500 in full settlement of the claim over a 36–month term. Three weeks after the plan was filed, and well before confirmation, IDOR filed claims asserting, *inter alia*, priority status. IDOR did not, however,—despite receipt of proper notice—file an objection to the plan. After the plan was confirmed, the Chapter 13 trustee filed objections to IDOR's claims, to the extent they exceed-

ed the $ 10,500 provided in the plan. The bankruptcy court sustained the trustee's objection, determining that the mandatory requirements of § 1322(a) were met, because the plan proposed a payment in satisfaction of IDOR's disputed claim. The court held that the debtors were not obligated to accept IDOR's calculations but could litigate the correct amount of the claim through the confirmation process (of which IDOR had proper and adequate notice). Since objections to claims are litigated as contested matters (as opposed to requiring adversary proceedings), IDOR was bound by the terms of the plan. *Id.* at 882–84.

On appeal, the district court affirmed, noting that the situation was "quite different from [that] in *Escobedo*," where *no* provision was made in the plan for payment of priority claims. *Id.* at 887. The court agreed that the confirmation process was an appropriate procedure to resolve the validity and amount of IDOR's disputed unsecured priority claim. *Id.*

In *Carr*, on the other hand, Judge Martin relied on *Escobedo* to vacate a confirmation order where the provisions of § 1322(b)(2) were violated. In *Carr*, Wells Fargo Bank held a mortgage on the debtor's principal residence and filed a secured claim for $146,270.02. Under the debtor's plan, Wells Fargo was to receive a payment based only on the appraised value of the property, i.e., $34,000, amortized over 20 years at 10.3%, to be paid in full in the 36th month. The balance of the $146,270.02 claim was to be treated as unsecured. *Carr*, 318 B.R. at 518. Wells Fargo moved to vacate the confirmation order on the ground that the plan violated § 1322(b)(2).

Judge Martin first noted that Wells Fargo had received adequate notice of the proceedings and did not file an objection to the plan, which was clear in its proposed

treatment of Wells Fargo's claim. The court further noted that confirmation of a Chapter 13 plan that is not objected to is generally not revocable except under § 1330 (which requires fraud). *Id.* at 520. Judge Martin nonetheless ruled that in the Seventh Circuit, relief could be afforded under Rule 60 in proper circumstances. He further noted that the debtor had not objected to Wells Fargo's claim; accordingly, "the statutory presumption of validity of a properly-filed claim" was "[s]et against the putative finality of a confirmation" order. *Id.* at 521. In conclusion, the court held:

> "Section 1322(b)(2) is mandatory in restricting the right to modify the claim of a secured creditor whose sole security is the debtor's principal residence. As in *Escobedo,* the provisions of the plan in this case do not comply with the mandatory provisions of the Code. Therefore, the result in this case must be the same as the result in *Escobedo*—the debtor's plan confirmation must be deemed nugatory."

*Id.* The court granted Wells Fargo's motion to vacate the confirmation order and held that the case would be dismissed if the debtor did not file a confirmable amended plan within 15 days.

This court expresses no opinion as to whether the *Carr* case was correctly decided; it is, in any event, distinguishable. First, there is no indication that Wells Fargo delayed in seeking relief from the confirmation order. More importantly, however, the *Carr* decision did not involve a cure of arrearages, which is expressly authorized by § 1322(b)(5) of the Code as an exception to the prohibition on modification contained in § 1322(b)(2). Section 1322(b)(5) provides that **"notwithstanding"** § 1322(b)(2), a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Accordingly, even if the rationale of *Escobedo* otherwise extends to cases involving the prohibition of § 1322(b)(2), it should not apply where the plan provision at issue is properly implementing an exception to that prohibition expressly carved out by the statute, i.e., providing for the cure of arrearages "notwithstanding" the prohibition on modification.

The confirmed plan in this case implemented that exception by providing for a cure of GMAC's arrearages in the very amount sought in its proof of claim and in its objection to confirmation. If that cure amount was insufficient, it is only because GMAC failed for almost two years to discover that it had made prepetition advances for property taxes. If a residence mortgagee such as GMAC were allowed to slumber throughout the plan term and then awaken to overturn a largely executed plan as "improperly confirmed" merely because of its unexcused failure to file a proper claim or objection to confirmation, the "bankruptcy principle of repose" (see *In re Harvey,* 213 F.3d 318, 322 (7th Cir. 2000)) would be all but eliminated.

GMAC finally contends that even if Debtor fails to modify the plan to accommodate the escrow advance, those additional arrears "will survive the Bankruptcy and will be collectible from the debtor after discharge." (Reply, at 4). The question, however, whether the escrow advance will be collectible after this case is closed is not currently before the court; no action has yet been taken (or could be taken at this point) to collect the additional arrears. The question at hand is whether the confirmation order must be vacated or the purported disallowance of additional claim reconsidered, and the court has found that

such relief is unwarranted. For purposes of any distribution from the trustee in this case, GMAC is bound by the cure amount set forth in the plan.

For all the foregoing reasons, GMAC's "Motion to Amend Order Confirming Case Dated June 9, 2005 and/or Reconsider Disallowance of Additional Claim" is denied.